UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARCUS TAYLOR, # 361170,

        Plaintiff,

v.

TERILYNN HILLIS, et al.,

        Defendants.

Case No. 1:10-cv-94

Honorable Robert Holmes Bell

**REPORT AND RECOMMENDATION**

This is a civil rights action brought *pro se* by a state prisoner under 42 U.S.C. § 1983. Plaintiff's complaint concerns conditions of his confinement at the Lakeland Correctional Facility (LCF) in November 2008. The defendants are Dr. Robert Lacy, Physician's Assistants Terrilynn Hillis and Hope Heebsh, and Sergeant Iris Nogueras.

Plaintiff's allegations against Dr. Lacy are the only allegations relevant for present purposes. Plaintiff alleges that on November 2, 2008, he contracted a bacterial infection on his face, that Dr. Lacy diagnosed his condition as "infertigo" and prescribed Kerflex. (docket # 54, ID# 140). Three days later, Dr. Lacy prescribed penicillin, after determining that the Kerflex was not strong enough to combat plaintiff's infection. (*Id.*). Plaintiff alleges that after a few days, he "began to experience an allergic reaction to the penicillin. [His] face began to swell and was causing him pain." (*Id.*). On November 10, 2008, Dr. Lacy again examined plaintiff, and prescribed Erythromycin. Plaintiff alleges that on the night of November 10, 2008, he experienced a serious allergic reaction and was not transported to the hospital until the next morning. (*Id.* at ID#s 140-41).

The matter is now before the court on Dr. Lacy's motion for summary judgment based on the affirmative defense provided by 42 U.S.C. 1997e(a). (docket # 122). Plaintiff filed his response (docket # 126) and defendant's motion for summary judgment is ready for decision. For the reasons set forth herein, I recommend that defendant Lacy's motion for summary judgment be granted and that all plaintiff's claims against Dr. Lacy be dismissed without prejudice.

## Applicable Standards

### A. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 362 (6th Cir. 2012). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). The court must draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adams v. Hanson*, 656 F.3d 397, 401 (6th Cir. 2011).

A party asserting that a fact cannot be genuinely disputed must support the assertion as specified in Rule 56(c)(1). FED. R. CIV. P. 56(c)(1). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden

of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e)(2), (3); *see Bozung v. Rawson*, 439 F. App'x 513, 518-19 (6th Cir. 2011). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see Donald v. Sybra, Inc.*, 667 F.3d 757, 760-61 (6th Cir. 2012).

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). The moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. "But where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Court of Appeals has repeatedly emphasized that the party with the burden of proof faces "a substantially higher hurdle" and "'must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000)); *see Surles v. Andison*, 678 F.3d

452, 455-56 (6th Cir. 2012); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999). This higher standard applies to defendant's motion for summary judgment based on the affirmative defense provided by 42 U.S.C. § 1997e(a).

### B. Standards Applicable to the Affirmative Defense of Failure to Exhaust Remedies

Defendant Lacy has asserted the affirmative defense of plaintiff's failure to exhaust administrative remedies. A prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. 42 U.S.C. § 1997e(a); *see Jones v. Bock*, 549 U.S. 199, 220 (2007); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 734. "This requirement is a strong one. To further the purposes behind the PLRA, exhaustion is required even if the prisoner subjectively believes the remedy is not available, even when the state cannot grant the particular relief requested, and even where the prisoner[] believes the procedure to be ineffectual or futile." *Napier v. Laurel County, Ky.*, 636 F.3d 218, 222 (6th Cir. 2011) (internal quotations and citations omitted).

In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules established by state law. *Jones v. Bock*, 549 U.S. at 218-19. In *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court held that the PLRA exhaustion requirement "requires proper exhaustion."

548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90; *see Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009). Thus, when a prisoner's grievance is rejected by the prison as untimely because it was not filed within the prescribed period, the prisoner's claim is not "properly exhausted" for purposes of filing a § 1983 action in federal court. 548 U.S. at 90-93; *Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir. 2011); *see* 42 U.S.C. § 1997e(a). The procedural bar does not apply where the State declines to enforce its own procedural rules. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010).

MDOC Policy Directive 03.02.130 (effective July 9, 2007) sets forth the applicable grievance procedures.[1] In *Sullivan v. Kasajaru*, 316 F. App'x 469, 470 (6th Cir. 2009), the Sixth Circuit held that this policy directive "explicitly required [the prisoner] to name each person against whom he grieved," and it affirmed the district court's dismissal of a prisoner's claim for failure to properly exhaust his available administrative remedies. *Id.* at 470.

Policy Directive 03.02.130 is not limited to the requirement that the individual being grieved be named in the Step I grievance. The following is an overview of the grievance process. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his control. *Id.* at ¶ P. If the mandatory pre-grievance attempt at resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* The Policy Directive also provides the following directions for completing Step I grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the *facts* involving the issue being grieved (i.e., who, what, when, where,

---

[1] A copy of the policy directive is found in the record. (docket # 122-1, ID#s 530-36).

why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). Thus, where an individual is not named in the Step I grievance, or his or her involvement in the issue being grieved is not indicated, or the individual is mentioned for the first time during an appeal of a denial of a grievance, the claims against that individual are not properly exhausted. *See Ketzner v. Williams*, No. 4:06-cv-73, 2008 WL 4534020, at * 16 (W.D. Mich. Sept. 30, 2008) (collecting cases); *accord Sullivan v. Kasajaru*, 316 F. App'x at 470.

The inmate submits the grievance to a designated grievance coordinator who makes an initial determination whether it should be rejected under MDOC policy or assigns it to a respondent. P.D. 03.02.130 at ¶¶ W, X. If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. The respondent at Step II is designated by the policy. The Step II respondent for grievances regarding health care issues is the Regional Health Administrator or the Administrator's designee. *Id.* at ¶ DD. If the inmate is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶ FF. The Step III appeal form must be sent to the Grievance and Appeals Section within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the Step III respondent. *Id.* at ¶ GG. The Grievance and Appeals Section forwards grievances regarding health care issues to the Administrator of the Bureau of Health Care Services (BHCS). The BHCS Administrator is required to ensure that the grievance is investigated and a

response provided to the Grievance and Appeals Section in a timely manner. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ S. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved in writing." *Id.*

Ordinarily, a prisoner must pursue appeals of his grievance through Step III of the administrative process. The Sixth Circuit has "clearly held that an inmate does not exhaust available administrative remedies when the inmate fails entirely to invoke the grievance procedure." *Napier*, 636 F.3d at 224. An argument that it would have been futile to file a grievance does not suffice. Assertions of futility do not excuse plaintiff from the exhaustion requirement. *See Napier*, 636 F.3d at 224; *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir.1999) ("[A]n inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations."); *see Booth v. Churner*, 532 U.S. at 741 n.6 ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").

**Proposed Findings of Fact**

Plaintiff was an inmate at the Lakeland Correctional Facility (LCF) at all times relevant to his complaint. On November 26, 2008, LCF's grievance coordinator received a grievance written by plaintiff and designated it as Grievance No. LCF-2008-11-1039-12F3. It is undisputed that this is the only grievance that plaintiff pursued through a Step III decision.

In response to the grievance form question regarding what he had done to attempt to resolve the issue before filing his grievance, plaintiff provided the response: "I was called to health care to received replacement med. I pointed out to the PA on call about the allergic reaction I was having to the meds an[d] asked to go to the hospit[al]." (docket # 122-1, ID# 543). The body of plaintiff's grievance is set forth verbatim below:

> Lt. Nocliaga was at the health care officer staion at time of incident, in trun I ask the L.T. if she could help me an she stated that she could do nothin unless health care said yes. L.T. Nocliaga needs to be questioned about this <u>Matter</u>!

(docket # 122-1, ID# 543). Exhibit A to plaintiff's grievance[2] contains a passing reference to Dr. Lacy, stating that he was the physician who directed that plaintiff be taken to a hospital for treatment:

> On the date of Nov. 10, 2008, I was called to health services to receive some replacement medication for the penicillin I was receiving. I was experiencing an allergic reaction I pointed out this fact to the P.A. on call that evening (20:10).
>
> I asked if it would be possible for me to be sent to the hospital because of the pain I was having My face was swelling up, and the P.A. said "No." I was issued a different form of anti-biotic called Erythromycin. After taking this new medication, I awoke the next morning to find my face "cracking and bleeding," and was obviously in excruciating pain.
>
> I immediately had the officer (Herman I bel[ie]ve it was) call health care; upon seeing how distorted my face appeared, Dr. Lacy decided to send me to the hospital.
>
> This is an accurate account of the facts in this matter, as I experienced them.

(docket # 100-1, ID# 366; docket # 126-1, ID# 638).

The Step I grievance response stated that plaintiff's grievance and medical records had been reviewed and indicated that plaintiff had received appropriate medical care. (docket # 122-1, ID# 544). Plaintiff's Step II and III appeals were denied. (docket # 122-1, ID#s 542-545).

---

[2]It is assumed for present purposes that Exhibit A was attached to plaintiff's grievance when he filed it.

On January 20, 2010, plaintiff filed this lawsuit.

## Discussion

Defendant Lacy has raised the affirmative defense that plaintiff did not properly exhaust his administrative remedies against him as required by 42 U.S.C. § 1997e(a). Grievance No. LCF-2008-11-1039-12F3 was the only grievance plaintiff pursued through a Step III decision. This grievance did not properly exhaust any claim against Dr. Lacy. Plaintiff's grievance was against defendant Nogueras and a physician's assistant for not ordering that he be sent to the hospital on the night of November 10, 2008, after he suffered a severe allergic reaction to medication. Defendant Lacy has carried his burden on the affirmative defense and is entitled to judgment in his favor as a matter of law. Nothing in plaintiff's grievance would have put any reasonable reader on notice that Lacy was "a person against whom he grieved." *Sullivan*, 316 F. App'x at 470. To the contrary, Dr. Lacy was the one who responded to plaintiff's situation, according to the grievance.

The only remaining question is whether the dismissal of plaintiff's claims against Dr. Lacy should be with or without prejudice. Generally, the dismissal of claims for failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a) is without prejudice. *See Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006). Defendant has not presented any developed argument why dismissal with prejudice would be appropriate.

It is virtually certain that any grievance plaintiff might now file against defendant would be rejected as untimely at Step I, and upheld on that basis at Steps II and III. A grievance so rejected would provide a basis for dismissing plaintiff's claims with prejudice because "proper exhaustion still requires compliance with the grievance policy's critical procedures such as

timeliness." *Vandiver v. Correctional Med. Servs., Inc.*, 326 F. App'x 885, 889 (6th Cir. 2009) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) and *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002) (stating that dismissal for failure to exhaust is without prejudice and does not bar the reinstatement of the suit, unless it is too late to exhaust)).  However, the Sixth Circuit's decision in *Reed–Bey v. Pramstalller* suggests that the court should not anticipate future events, but should instead wait and see whether the State actually enforces its procedural rules. 603 F.3d at 325-26.

## Recommended Disposition

For the reasons set forth herein, I recommend that defendant's motion for summary judgment (docket # 122) be granted and that all plaintiff's claims against defendant Lacy be dismissed without prejudice.

Dated:   January 2, 2013              /s/  Joseph G. Scoville
                                      United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).